## Borough of Sayre v. Department of Environmental Resources

*Gerald A. Zeller*, for appellant.
*Maxine Woelfling*, for appellee.
*Donald M. Taylor*, for intervenors.

WATERS, *Chairman*, January 31, 1979—This matter comes before the board as an appeal by the Borough of Sayre from an order issued by the Department of Environmental Resources (DER) pursuant to the Pennsylvania Sewage Facilities Act of January 24, 1966, P.L. 1535, as amended, 35 P.S. §750.1 et seq. [Act 537], requiring appellant to amend its sewage plan to allow intervenor, David Henry, et ux, to install an on-lot sewage disposal system. The intervenors own a large lot on which

they desire to construct a multi-family residential dwelling. Although soil samples and tests indicate the lot to be suitable, appellant nevertheless does not want the new sewage system installed allegedly because of a nearby pond. Great effort has thus far been expended on all sides to bring this matter finally before the board for resolution.

## FINDINGS OF FACT

1. The intervenors are David T. and Mary Sheila Henry, of 119 Brock Street, Sayre, Pa. They are the owners and developers of the proposed Brock Street Apartments in Sayre, Pa.

• • •

5. The official plan [for Bradford County] does not presently address the sewage disposal needs of the Brock Street development.

6. The intervenors requested the Borough of Sayre informally and formally through a private request with the DER to amend or supplement its official plan on November 12, 1977.

7. An independent field investigation was conducted by the DER on the proposed site in which approximately three test holes were dug on January 24, 1978. Said test holes were made at locations selected by the DER in the area where the on-lot sewage system was planned to be constructed.

8. The DER evaluated the soil profiles taken during the independent investigation and determined that the soils on the development site were suitable for alternate subsurface disposal systems and that proper installation of such a system would pose no danger to groundwater contamination or corresponding pollution to Packer Pond.

9. The existing sewer lines on streets adjacent to

Brock Street are over 200 feet away from the proposed project.

10.  To tap into the existing sewer system would require a pumping station to pump sewage up from Brock Street and it appears that the sewer system on said streets is overloaded at this time.

11.  The development proposal for the on-lot alternate sewage system proposed by the Henrys is consistent with the long range objectives of the Sayre offical plan and regional and state plans.

12.  The Borough of Sayre does not plan to sewer Brock Street because of financial inability.

13.  The Borough of Sayre was ordered to issue a building permit to the Henrys on May 27, 1977, by the Court of Common Pleas of Bradford County. Said permit was issued August 10, 1977, by William Lynch, the Sayre Borough zoning officer.

14.  Sayre was requested to revise its official plan to incorporate the Brock Street Apartments by letter from David Lamereaux of the DER dated March 6, 1978, which it refused to do.

15.  The Borough of Sayre was thereafter ordered to revise its official plan by the DER on May 4, 1978.

• • •

18.  Permits for on-lot disposal systems in Sayre are issued by the Bradford County Sanitation Committee (sanitation committee) pursuant to an agreement between Sayre and the sanitation committee dated October 13, 1975.

19.  The sanitation committee was created by municipalities in Bradford County to administer the permit provisions of the Pennsylvania Sewage Facilities Act, supra.

20.  Although the two streets adjoining Brock Street, Stevenson and Lockhart Streets, are pres-

ently sewered, the borough informed the DER that it had neither plans nor funds for sewering Brock Street.

21. DER's regulations require that a municipality update its official sewage facilities plan (official plan) whenever a subdivision is proposed.

22. Because the Henrys' on-lot disposal permit did not conform with the Sayre official plan, the DER, by letter dated November 14, 1977, requested the sanitation committee to revoke the Henrys' permit.

23. The sanitation committee revoked the Henrys' permit by letter dated November 16, 1977.

24. The Henrys requested Sayre to revise its official plan to address the sewage disposal needs of the Brock Street development and their request was refused.

25. Pursuant to 25 Pa. Code §71.17(a), the Henrys submitted a private request for revision of the Sayre official plan to the DER on November 21, 1977.

26. As part of the request, the Henrys submitted a planning module for land development; a deed for the property in question; a copy of the permit issued and subsequently revoked by the sanitation committee; and the permit application, including the percolation tests and site inspection reports.

27. Sayre's objections to the Henrys' request were that on-lot systems were inconsistent with the borough's objectives of providing public sewers; that, despite a court order, the proposed development was inconsistent with its zoning ordinance; that the soils underlying the site were unsuitable for use of on-lot systems; that use of on-lot systems would pose a danger of groundwater contamination

and subsequent pollution of Packer Pond; and that installation of a sewer line in the area was not financially feasible.

28. The Sayre official plan makes no provision for how property owners erecting structures in existing developed areas will dispose of sewage until sewer lines are extended into those areas.

29. On-lot disposal is employed by the residents in the immediate vicinity of the proposed Henry development.

30. There are no limitations on the issuance of on-lot disposal system permits in the area, nor does Sayre have any ordinances restricting their use.

31. The DER has received no complaints regarding malfunctioning of the existing on-lot systems in the area.

32. Because of the controversy surrounding the Henrys' proposed development and an anticipated appeal of the DER's decision on the private request, the DER undertook an independent site investigation.

33. Although the DER did not directly notify Sayre of the field inspection, it did notify the sanitation committee.

34. No representative of the sanitation committee was present at the field inspection.

•　•　•

37. In our review of this matter, we agree with the conclusion of DER that the Henrys' proposed system was properly isolated from Packer Pond, a nearby body of surface water, since the disposal area was more than 50 feet away from the pond.

•　•　•

39. The Henrys' proposed development would be consistent with the Sayre official plan since the municipality is presently unable to extend sewers

to Brock Street and the residents of the area currently employ on-lot systems for disposal of their wastes.

40. The Henrys' proposed development is consistent with the Northern Tier Regional Plan, the only relevant county, regional or state plan.

41. A building permit was issued to the Henrys on August 10, 1977, and was revoked on or about May 31, 1978, because the Henrys failed to commence construction within the requisite six months.

42. The Henrys unsuccessfully appealed the building permit revocation to the Sayre Zoning Board and are presently litigating the matter before the Bradford County Court of Common Pleas.

## DISCUSSION

The intervenors in this case have displayed an unusual amount of perseverance against an intractable municipal government and no doubt are beginning to believe the old adage about "fighting City Hall."

On July 1, 1977, a permit to construct an on-lot sewage disposal system was issued to David T. and Mary Sheila Henry, developers of the proposed Brock Street Apartments, by the Bradford County Sanitation Committee. The permit was revoked by the sanitation committee on November 16, 1977, because of the lack of municipal approval. The Henrys thereafter on November 21, 1977, initiated a private request through the DER for an order directing the Borough of Sayre to amend or supplement its official plan and at approximately the same time appealed the revocation before the Sayre Borough Council. The borough denied the Henrys'

request, but on May 4, 1978, the department issued an order requiring Sayre to amend or supplement its official plan to accommodate the Henrys' sewage disposal plan. The borough appealed said order June 7, 1978, and thereafter the Henrys intervened in the proceedings.

It was because of the difficulty the intervenors were experiencing at the local level that they submitted a private request to the DER to order the borough to amend or supplement its official plan pursuant to 35 P.S. §750.5(b) and §71.17 of the DER regulations. On January 24, 1978, DER's soil scientist made an independent investigation of the site, examined and tested soils and subsequently determined that the location was suitable for the installation of an alternate on-lot system.

It may be that appellant actually refused to amend its Act 537 plan because it does not want the proposed multi-family dwelling[1] in the area, but it argues against on-lot sewage disposal. While it is true that there are public sewer lines on nearby streets, as a practical matter, they are unavailable to intervenors. One existing sewer line is more than 200 feet away and the other would require a pump in order to reach it, because of elevation. Appellant admits it does not have any present plans to meet the sewage disposal needs of intervenors who are otherwise presently ready, willing and able to develop their tract of land.

Intervenors have pursued the only available means to obtain a plan revision. The Pennsylvania Sewage Facilities Act, supra, provides section 5(b)

1. On-lot disposal is used by other residents of the borough in the immediate vicinity.

that a private request for revision may be made when ". . . the official plan is inadequate to meet the resident's or property owner's sewage disposal needs. Such request may only be made after a prior demand upon and refusal by the municipality to so revise its official plan."

Another matter of appellants' concern, although not easily identified, seems to be a fear of pollution of Packer Pond. Appellant borough has planted trees near the pond and does maintain it for public use. Appellant seems to accept the scientific evidence which indicates that the soil is suitable for an on-lot alternate system.[2] It is the fact that no one representing the borough was present when the tests were conducted that does not sit well with the borough.[3] No doubt more detailed information could have been collected, but we must nevertheless conclude that the pond, which is estimated to be 75 to 100 feet from the proposed site, will not be adversely affected by a properly installed system. If appellant had evidence, as opposed to suspicions, to the contrary, it should have been presented at the hearing. In fact, the less satisfied that appellant was with the DER's findings, the greater was its responsibility to gather data of its own to refute it. We believe appellant should have been notified of DER's intention to inspect the site and test the soil

2. On page 6 of its brief, appellant states that: "No suggestion is made by the Borough of Sayre that there was any error in the findings of the Department" as relates to soil suitability.

3. DER's explanation was that when it notified the Bradford County Sanitation Committee to which the responsibility had been delegated, it would in turn notify Sayre. This was a matter of dispute.

so its representative could be present. But this oversight on the part of DER does not change the results of that testing, and indeed they are not seriously contested.

Perhaps the major objection raised by appellant concerns the question of local zoning. On May 27, 1977, the borough and its zoning officer were ordered by the Court of Common Pleas of Bradford County to issue a building permit to intervenor for the purpose of constructing a four-unit apartment house on Brock Street in Sayre, Pa. The order was issued as a result of the borough's inaction for more than 45 days after an application and hearing on the matter.[4] The borough issued the permit, apparently with some reluctance, on August 10, 1977.

In May of 1978, the borough revoked the building permit and the legality of that action is now before the Bradford County Court. Appellant would bootstrap its way in this matter by arguing that we should sustain the appeal because intervenors have no permit and the proposed construction would violate local zoning laws. We are urged to disregard the court order, as appellant has done, and ". . . not simply to take the Court Order at face value." We find this argument all the more incredible because appellant cites the Fox case[5] for the proposition that the department is not to second

4. The area in question is zoned for single family structures and intervenors sought a variance under the Municipalities Planning Code of July 31, 1968, P.L. 805, as amended, 53 P.S. §10912. The court granted the variance because no decision was issued by Sayre Borough within the required 45-day period.

5. Community College of Delaware County v. Fox, 20 Pa. Commonwealth Ct. 335, 342 A. 2d 468 (1975).

guess the validity of local decisions properly made in the areas of planning and zoning. Yet, that is exactly what it asks us to do with regard to the Bradford County Court. We will not. When and if the local court enters a new order on the action now before it, we would expect the DER to act consistently with it.[6]

It is clear that appellant has no present intention or discernable future intention to sewer the Brock Street area here in question. The other dwellings in the area have on-lot sewage disposal. Intervenors have a desire to develop their property but the borough has failed to either provide for public sewerage or to amend its sewage disposal plan to allow intervenor to use an on-lot system. The Commonwealth Court in Commonwealth v. Trautner, 19 Pa. Commonwealth Ct. 116, 338 A. 2d 718 (1975), dealing with a related situation, said:

"The landowner is still not free to use his land until such time as another party, over whom he has absolutely no control, acts in a manner satisfactory to DER. There is no guarantee that such action will occur within a reasonable time, or for that matter, ever occur.

"Even if municipal officials failed to comply with an order directing them to revise their official plan and were fined or eventually found in contempt, the property owner would still not have DER approval for his project. Likewise, a municipality may *refuse*

---

6. If the Bradford County Court upholds the building permit revocation and denies the zoning change, the Act 537 amendment will be of no help to intervenor. If, on the other hand, the court upholds its prior order, we would expect all parties to act accordingly.

to revise its plan to include an on-lot system because of plans for a community sewage system to be constructed some time in the distant future. The property owner can be effectively denied the use of his land while a plan, which is to be implemented at some indefinite time, if at all, is managed by local officials.

"...

"We have carefully examined the record and the regulatory scheme involved in this case and we conclude that, as applied to Trautner's circumstances, the regulations noted above constitute an unreasonable restriction on the use of his land and are, in effect, a confiscation without due process of law. By sustaining DER's appeal we would be enforcing these regulations in derrogation [sic] of Trautner's constitutional rights, and this we cannot do." [at 122-23]

We conclude that there has been no abuse of discretion on the part of the DER in ordering an amendment to appellants' Act 537 plan.

## CONCLUSIONS OF LAW

1. The board has jurisdiction over the parties and subject matter of this appeal.

2. DER's conclusion that the intervenors lot is suitable for the installation of an alternate subsurface disposal system with safety to Packer Pond is supported by substantial evidence.

3. While the DER regulation §71.17(c)(3) requires that applicable zoning be considered in this matter, DER and this board must be guided by a decision of the appropriate common pleas court regarding zoning rights.

4. DER did not abuse its discretion under the

Pennsylvania Sewage Facilities Act of January 24, 1966, P.L. 1535, as amended, 35 P.S. §750.1 et seq., in ordering appellant to accommodate the sewage disposal needs of intervenor by amending its sewerage plan.

## ORDER

And now, January 31, 1979, the order of the Department of Environmental Resources is hereby sustained and the appeal is dismissed.