## Commonwealth of Pennsylvania, Department of Environmental Resources, Appellant, *v.* David Trautner, Appellee.

Argued March 6, 1975, before Judges CRUMLISH, JR., KRAMER and ROGERS, sitting as a panel of three.

*Michael S. Alushin,* Special Assistant Attorney General, with him *Maxine Woelfling,* Special Assistant Attorney General, for appellant.

*Richard H. Roesgen,* for appellee.

OPINION BY JUDGE KRAMER, May 19, 1975:

This is an appeal by the Department of Environmental Resources (DER) from an order of the Environmental Hearing Board (Board), dated August 1, 1974, in which the Board sustained an appeal by David A. Trautner (Trautner).[1] Trautner had appealed from DER's denial

---

1. Trautner did not file a brief in this Court, and no argument was made on his behalf.

of a permit for an individual on-lot sewage treatment system.

Trautner owns a parcel of land in Hepburn Township (Township), a rural municipality located near Williamsport. Recently the Township has experienced growth and development, which has resulted in construction activity in previously unpopulated areas of the municipality.

Like all Pennsylvania municipalities, the Township is required to file with DER an acceptable comprehensive plan for the disposal of sewage, pursuant to the Sewage Facilities Act (Act), Act of January 24, 1966, P.L. (1965) 1535, *as amended,* 35 P.S. §750.1 et seq. (Supp. 1974-1975). Sections 3 and 5 of the Act, 35 P.S. §§750.3 and 750.5 (Supp. 1974-1975) provide, *inter alia,* for the promulgation of regulations governing review and acceptance of official plans, and for periodic revisions (by the municipality) of such plans. From the record it appears that there is no question that the Township has filed an acceptable initial comprehensive plan, and the only real controversy in the instant case involves the Township's attempt to amend its plan to accommodate the construction of a home in a hitherto undeveloped (and consequently unplanned) area.

The comprehensive plan filed by the Township did not envisage the construction of a home on Trautner's lot, and, in support of *his* application for a permit, the Township filed with DER a brief amendment to its plan which read, in its substantive portion, as follows:

> "Now, therefore, be and it is hereby resolved, that the Township of Hepburn does hereby revise said Township's official plan in order to provide for the individual residential sewage treatment facility for the David A. Trautner property."

DER rejected Trautner's permit on alternative grounds, specifying that (1) the above-quoted resolution was an inadequate revision under DER regulation 71.16(b), 25 Pa. Code §71.16(b) ; and (2) the project was not located

in an "isolated area," as required by regulation 91.32, 25 Pa. Code §91.32.

Our scope of review is governed by section 44 of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended,* 71 P.S. §1710.44, which provides, *inter alia,* for review for errors of law, violations of constitutional rights, and the determination of whether the findings of the Board are supported by substantial evidence.

DER raises two basic questions, one of which may be disposed of quickly. Regulation 91.32, 25 Pa. Code §91.32, reads as follows:

"(a) The Department will look with disfavor upon applications for sewerage permits for private sewerage projects *to be located within the built-up parts of cities, boroughs, and first and second class townships.*

"(b) Generally, issuance of such sewerage permits will be limited to proper private sewerage projects *located in the rural parts of first and second class townships,* and for which areas there appears to be *no present necessity* for public sewerage." (Emphasis added.)

The Board specifically found that Trautner's lot was "isolated" and "rural," and that there was no "present necessity for public sewerage." In addition to hearing testimony relative to these findings, the hearing examiner viewed the property. After reviewing the record, we have no difficulty concluding that the Board's finding, that Trautner's lot is isolated and rural, is supported by the record. We are cognizant, as was the Board, of the fact that the future growth of the Township may alter the present status of the area in question, but regulation 91.32 speaks to *present* conditions, and we cannot, therefore, find error in the Board's findings. We note that this approach is consistent with the rather strict view DER takes of the regulations involved with the issue which remains.

The regulations which underlie the second issue in this case are complex, but the essence of the controversy

may be succinctly described. Regulations 91.31(a) and (b), 25 Pa. Code §91.31(a) and (b), require that a private project (such as Trautner's) be in conformity with a "comprehensive program of water quality management" before departmental approval (i.e., the issuance of a permit) will be granted. Regulation 71.16, dealing with revision of municipal plans (for comprehensive water quality management), specifies that an effective revision must include certain data which was not provided in the instant case. DER reasons that since the Township's plan was not revised in accordance with the regulations, the Trautner sewage proposal was not in conformity with a "comprehensive program of water quality management" and, hence, Trautner's application should have been denied.

The problem with DER's position is that, under the regulations currently in effect, a property owner can be effectively denied his right to use his property until such time as *the municipality* has satisfied DER that sewage disposal on the property is in conformity "with a comprehensive program of water quality management." The burden is placed upon the property owner to motivate his municipality to (1) comply with the regulations relevant to amending municipal plans; and (2) satisfy DER that the property owner's plan for sewage disposal is otherwise acceptable. If the municipality fails to act to amend its plan, or cannot or will not fully satisfy DER, for whatever reasons, the property owner is left with no sewage permit and no opportunity to use his land in what is otherwise a completely lawful manner. This situation is confiscatory and tantamount to a taking without due process of law. *Robin Corporation v. Board of Supervisors of Lower Paxton Township,* 17 Pa. Commonwealth Ct. 386, 332 A. 2d 841 (1975); *Township of Neville v. Exxon Corporation,* 14 Pa. Commonwealth Ct. 225, 322 A. 2d 144 (1974).

DER argues that the property owner has a remedy for municipal inaction in regulation 71.17,[2] 25 Pa. Code §71.17, which reads as follows:

"(a) Any person who is a resident or property owner in a municipality may request the Department to order the municipality to revise its official plan

---

2. We note that regulation 71.17 has recently been amended to read as follows:

"(a) Any person who is a resident or property owner in a municipality may request the Department to order the municipality to revise its official plan where said person can show that the official plan is inadequate to meet the resident's or property owner's sewage disposal needs. The request to the Department shall contain a description of the area of the municipality in question and an enumeration of all reasons advanced by said person to show the official plan's inadequacy.

"(b) Upon receipt of a private request for revision or supplement, the Department shall notify the appropriate municipality and shall request written comments from the municipality to be submitted within 30 days.

"(c) In arriving at its decision as to whether to order a revision or supplement, the Department shall consider at least the following:

"(1) The reasons advanced by the requesting individual in comparison with reasons advanced by the municipality, if submitted.

"(2) Past actions by the municipality in approving the plans for the lot or lots in question.

"(3) Any applicable zoning; subdivision regulations; local, county, or regional comprehensive plans; or any existing Commonwealth plan.

"(4) The existing plan developed under the provisions of this Chapter.

"(d) The Department shall render its decision, and inform the person requesting and the appropriate municipality, within 60 days after receipt of all information contained in subsections (b) and (c) of this section. If the Department refuses to order a revision or supplement requested under subsection (a) of this section, it will notify the person in writing of the reasons for such refusal. Any person aggrieved by the action of the Department may appeal to the Environmental Hearing Board pursuant to Chapter 21 of this Title (relating to rules of practice and procedure)."

where said person can show that the official plan is inadequate to meet the resident's or property owner's sewage disposal needs. The request to the Department shall contain a description of the area of the municipality in question and an enumeration of all reasons advanced by said person to show the official plan's inadequacy.

"(b) If the Department refuses to order a revision requested under subsection (a) of this section, it will notify the person in writing of the reasons for such refusal. Any person aggrieved by the action of the Department may appeal to the Environmental Hearing Board pursuant to Chapter 21 of this Title (relating to rules of practice and procedure)."

It is certainly true that this regulation provides the property owner with a course of action to follow. It does not, however, necessarily provide an adequate means of protecting the owner's property rights. The landowner is still not free to use his land until such time as another party, over whom he has absolutely no control, acts in a manner satisfactory to DER. There is no guarantee that such action will occur within a reasonable time, or for that matter, ever occur.

Even if municipal officials failed to comply with an order directing them to revise their official plan and were fined or eventually found in contempt, the property owner would still not have DER approval for his project. Likewise, a municipality may *refuse* to revise its plan to in-

---

This regulation was effective September 15, 1974. Trautner's application was filed on October 15, 1973 and denied by DER on December 4, 1973. The original version of regulation 71.17 was effective October 14, 1973, one day before Trautner's application was filed.

Although the new version of regulation 71.17 was not available to Trautner at the time his permit was denied, or to the Board when it rendered its adjudication, we have considered it in deciding this case. It appears to suffer from the same infirmity as the original version, and the comments made in the following portions of this opinion are equally applicable to it.

clude an on-lot system because of plans for a community sewage system to be constructed some time in the distant future. The property owner can be effectively denied the use of his land while a plan, which is to be implemented at some indefinite time, if at all, is managed by local officials. Such community-wide planning can involve action by the officials of several municipalities, a local authority, and DER, and can involve complicated and time-consuming financing and negotiations. The use of the "isolated area" requirement of regulaton 91.32 as a basis for denying Trautner's permit in the instant case is evidence of the position DER might take if the municipality itself was of the opinion that community-wide sewage facilities would be desirable in the foreseeable future. While we realize that DER and local officials are obligated to make adequate plans for the disposal of sewage, under the present regulatory scheme, a property owner, such as Trautner, can be denied the reasonable use of his property while all of the various parties involved pursue agreement among themselves regarding what precisely is to be done with an area in transition from "isolated" to non-isolated status.

We have carefully examined the record and the regulatory scheme involved in this case and we conclude that, as applied to Trautner's circumstances, the regulations noted above constitute an unreasonable restriction on the use of his land and are, in effect, a confiscation without due process of law. By sustaining DER's appeal we would be enforcing these regulations in derrogation of Trautner's constitutional rights, and this we cannot do. Accordingly, we

ORDER

AND NOW, this 19th day of May, 1975, it is hereby ordered that the order of the Environmental Hearing Board, dated August 1, 1974, requiring that the Department of Environmental Resources issue a permit to David A. Trautner for the construction and operation of an individual on-lot sewage treatment system, is affirmed.