## Shell Oil Co. v. Bucks County
## Department of Health

*C. David Krewson,* of *Stuckert, Yates & Krewson,* for appellant.

*John P. Krill,* for Commonwealth.

COHEN, *Member,* June 30, 1975—This matter is before the board on the appeal of Shell Oil Company (hereinafter Shell) from the action of the Bucks County Department of Health (hereinafter Bucks), taken on July 2, 1974, denying Shell's application to install a holding tank in connection with its proposed service station to be built on its property situate at the intersection of Route 611 and Edison Road, Doylestown, Bucks County, Pa. The stated reasons for the denial was Shell's alleged failure to comply with the requirements of 25 Pa. Code §71.61(a)(1) and (2) which, at the time of the denial, provided:

"§71.61.[1] Restrictions on use.

---

1. At the time of the denial, these provisions were part of 25 Pa. Code §71.61. However, the substantially same provisions are now, as a result of the revisions of August 22, 1974, and February 20, 1975, set forth in 25 Pa. Code §71.51.

"(a) Holding tanks require regular service and maintenance to prevent their malfunction and overflow and shall be used only in lieu of treatment tanks and subsurface absorption areas when all the following specific conditions are met:

"(1)' The applicable official plan or the revision thereto indicate the use of holding tanks for that lot and provides for replacement by adequate sewerage services in accordance with a schedule approved by the Department . . .

"(2) The municipality, sewer authority, or other Department-approved entity with jurisdiction or responsibility over the site has by suitable ordinance, regulation, or restriction assumed responsibility for maintaining existing and new holding tanks and has received Department approval for its proposed disposal site."

On September 17, 1974, the board issued an order to Shell and Bucks, the only parties of record before the board at that time, to submit to the board on or before October 17, 1974, a stipulation of those material facts to which they are able to agree. The said stipulation was filed with the board on October 19, 1974. On January 20, 1975, the parties were ordered to submit briefs on the legality of 25 Pa. Code §71.61(a)(1) and (2) on or before January 31, 1975. On January 30, 1975, the parties submitted their briefs on the issue of the legality of the aforementioned regulation. On the same day, the Pennsylvania Department of Environmental Resources (hereinafter DER) filed a petition for leave to intervene. On February 7, 1975, Shell filed an answer to DER's petition. On February 14, 1975, the board granted the Commonwealth's petition to intervene for the sole purpose of allowing it to file a brief in support of the legality of the contested regu-

lation of DER. Said brief was to be filed on or before March 3, 1975. The Commonwealth filed its brief with the board on the scheduled date.

On March 4, 1975, DER filed a motion for oral argument and a petition for a hearing. On March 6, 1975, DER filed an amended petition for hearing. The motion for oral argument and the petitions for a hearing were denied by the board on May 19, 1975.

On the basis of the foregoing, the board enters the following

## FINDINGS OF FACT

1. Appellant is Shell Oil Company, a Delaware corporation registered to do business in Pennsylvania with a registered business address of P. O. Box 805, Valley Forge, Pa.

2. Appellee is the Bucks County Department of Health, which is authorized to issue permits under the Pennsylvania Sewage Facilities Act of January 24, 1966, P.L. (1965) 1535 (No. 537), as amended, 35 PS §750.1, et seq.

3. Intervenor is DER, the agency of the Commonwealth authorized to administer The Clean Streams Law of June 22, 1937, P.L. 1987, as amended, 35 PS §690.901, et seq., and to adopt regulations under the Pennsylvania Sewage Facilities Act, supra.

4. Shell Oil Company is the owner of a certain tract of real estate situate at the intersection of Route 611 and Edison Road in Doylestown, Bucks County, Pa.

5. Shell has obtained the requisite zoning and building permits from the appropriate local authorities for the erection of a gasoline service station on the aforesaid property.

6. On May 8, 1972, Bucks issued a permit to Shell for the installation of an on-site sewage disposal system at the above site.

7. In April 1973, Shell began extensive demolition, grading and rock removal at the above site.

8. Construction of the service station proper was begun by Shell in late August, 1973.

9. On October 15, 1973, Shell received formal notice of a stop order issued by Bucks.

10. A hearing on the Bucks stop order was held on November 21, 1973.

11. Shell was notified by Bucks on November 23, 1973, that the revocation of the permit previously issued was upheld. Shell never appealed this revocation to the Environmental Hearing Board.

12. On April 30, 1974, Shell submitted revised plans for an on-site system.

13. On May 6, 1974, Shell was advised by Bucks County that no on-site system except a holding tank would be approved for this location.

14. Shell was also advised by Bucks on May 6, 1974, that in order to get approval for a holding tank, the requirements set forth in 25 Pa. Code §71.61(a)(1) and (2) would have to be met.

15. On June 17, 1974, Shell filed an application for approval of a holding tank system with Bucks. Bucks denied the application for failure to comply with 25 Pa. Code §71.61(a)(1) and (2).

16. The applicable official plan does not indicate the use of holding tanks for the lot in question and does not provide for replacement by other sewerage services in accordance with a schedule approved by the Department.

17. Doylestown Township has not assumed responsibility for maintaining existing and new holding tanks by appropriate ordinance or resolution.

18. The holding tank proposed by Shell meets all the holding tank design specifications set forth in the DER rules and regulations.

19. Shell has offered to post a bond to guarantee the absolute cleanliness of its holding tank operation and to give appropriate assurances that it will deal only with a competent and reputable holding tank cleaning company.

20. There is no community sewer line accessible to this property.

21. Shell has thus far expended $130,188 in site preparation and improvement of the property in question.

## DISCUSSION

The central issue in this case is whether 25 Pa. Code §71.61(a)(1) and (2) are a proper exercise of the authority of DER under the provisions of the Pennsylvania Sewage Facilities Act, supra, or the provisions of The Clean Streams Law, supra. We are not concerned in this appeal with the action of Bucks in revoking a prior permit issued to Shell for an on-lot sewage disposal facility on the same tract of land in question. Shell never appealed that revocation to this board within the requisite time; therefore, we may not inquire as to the propriety of that action. Neither are we concerned with whether the revocation of the permit was the result of activities engaged in by Shell or for some other reason. We must presume that the revocation was for the reasons set forth in section 7(f) of the then operative provisions of the Pennsylvania Sewage Facilities Act, supra.

Whether the provisions of the Pennsylvania Sewage Facilities Act, supra, authorized the adoption of 25 Pa. Code §71.61(a)(1) and (2) depends upon the

provisions of that act. Section 7(a) of the act, 35 PS §750.7a, provides:

"No person shall install an individual or community sewage disposal system or construct any building for which an individual or community sewage disposal system is to be installed without first obtaining a permit indicating that the site and the plans and specifications of such system are in compliance with the provisions of this act and the standards adopted pursuant to this act. No permit shall be required by the department county department of health, joint county department of health, joint municipal department of health, municipality, joint township department of health or township in those cases where a permit from the Sanitary Water Board or the secretary has been obtained, or where the department determines that such permit is not necessary for the protection of the public health or for a rural residence."

Section 9 of this act, 35 PS §750.9, clearly sets forth the power and duties of DER in respect of the adoption of rules, regulations, standards and procedures. It provides:

"The department shall have the power and its duties shall be to adopt such rules, regulations, standards and procedures as shall be necessary to enable it to carry out the provisions of this act, to wit: adoption of standards for construction and installation of community individual and community sewage disposal systems and standards for construction, installation and maintenance of community sewage treatment plants, requirements for disbursement of State and Federal funds to municipalities for planning, personnel and construction of water supply and sewage disposal systems, and review and acceptance of official plans."

Assuming arguendo that the holding tank proposed in Shell's application falls within the definition of "individual sewage system"[2] as defined in section 2 of the Pennsylvania Sewage Facilities Act, supra, 35 PS §750.2, it is clear that with reference to such individual systems the department may only adopt standards for their construction and installation. Moreover, the authority to grant or deny permits is limited to a determination with regard to whether the site and plans and specifications of the system are in compliance with the provisions of the act and the standards adopted pursuant thereto. Thus, there is no authority in the Pennsylvania Sewage Facilities Act, supra, to condition the granting of an individual sewage system upon compliance with the provisions of 25 Pa. Code §71.61(a)(1) and (2).

Although there is nothing in the Pennsylvania Sewage Facilities Act, supra, which would authorize such conditions in regulations adopted pursuant to its provisions, nevertheless, section 402(a) of The Clean Streams Law, supra, provides:

"Whenever the board finds that any activity, not otherwise requiring a permit under this act, including but not limited to the impounding, handling, storage, transportation, processing or disposing of materials or substances, creates a danger of pollution of the waters of the Commonwealth or that regulation of the activity is necessary to avoid such

2. Inasmuch as individual sewage systems is defined in this section as ". . . a single system of piping, tanks or other facilities serving one or two lots and collecting and disposing of sewage in whole or in part into the soil of the property or into any waters of this Commonwealth," we express serious doubt as to whether a holding tank falls within this definition: 35 PS §750.2.

pollution, the board may, by rule or regulation, require that such activity be conducted only pursuant to a permit issued by the department or may otherwise establish the conditions under which such activity shall be conducted, or the board may issue an order to a person or municipality regulating a particular activity. Rules and regulations adopted by the board pursuant to this section shall give the persons or municipalities affected a reasonable period of time to apply for and obtain any permits required by such rules and regulations."

The provisions of section 402(a) of The Clean Streams Law, supra, clearly confer upon DER alternative methods by which it may regulate activity creating a danger of pollution to waters of the Commonwealth.

During the pendency of this matter, Commonwealth Court rendered its decision in: Commonwealth v. Trautner, 19 Pa. Commonwealth Ct. 116 (1975). In that case Trautner made application to DER for a permit to install an individual sewage treatment plant to serve a home to be constructed on his six-acre tract of land in Hepburn Township, Lycoming County, Pa. The effluent from the proposed sewage treatment facility was to be discharged into a small stream nearby. DER raised no objection to the ability of the treatment facility to perform its intended purpose so long as Trautner regularly serviced it. Nevertheless, DER refused to issue Trautner a permit for the facility for the reason that, inter alia, Hepburn Township did not have an official plan approved by DER under the provisions of the Pennsylvania Sewage Facilities Act, supra, which included the proposed treatment facility as part of the plan. The township attempted to revise its plan by including the Trautner facility,

but DER refused to approve the revision because it did not contain data required by DER regulations.

The basis of the department's refusal in Trautner was 25 Pa. Code §93.31(a) and (b) which requires that a private sewerage project be in conformity with a comprehensive program of water quality management before DER may grant the project a permit. To have been part of such a comprehensive program, the Trautner project would have had to be part of the Hepburn Township official plan or a revision thereof which would be approved by DER. Since the Trautner project was not part of an approved official plan or revision thereof, DER refused to issue a permit for the treatment facility. In holding such a regulatory scheme to be unconstitutional as depriving a landowner of the reasonable use of his property, the court said:

". . . While we realize that DER and local officials are obligated to make adequate plans for the disposal of sewage, under the present regulatory scheme, a property owner, such as Trautner, can be denied the reasonable use of his property while all of the various parties involved pursue agreement among themselves regarding what precisely is to be done with an area in transition from 'isolated' to nonisolated status.

"We have carefully examined the record and the regulatory scheme involved in this case and we conclude that, as applied to Trautner's circumstances, the regulations noted above constitute an unreasonable restriction on the use of his land and are, in effect, a confiscation without due process of law. By sustaining DER's appeal we would be enforcing these regulations in derrogation of Trautner's constitutional rights, and this we cannot do."

While there are many factual distinctions between the matter before us and Trautner, we are of the opinion that Trautner holds that where a regulatory scheme denies a person the reasonable use of his property pending undertakings by a municipality which may never occur, such regulatory scheme is a violation of the due process clause of the 14th admendment of the United States Constitution. Although we are of the opinion that 25 Pa. Code §71.61(a)(1) and (2) are not unconstitutional when applied to realty subdivisions, inasmuch as a proliferation of holding tanks may pose a public health and a pollutional hazard, nevertheless in the circumstances of this case we believe Trautner mandates us to reverse the Bucks County Department of Health decision to deny Shell a permit for a holding tank.

The facts of this case are unusual in that Shell invested a large sum in the development of the service station prior to the revocation of its permit for a septic tank system. After that revocation, Shell was informed that a holding tank was the only available system, but that it could not have a holding tank because there was no official plan provision for holding tanks at that site and no ordinance providing for their maintenance. Shell has offered to post a bond to assure the proper maintenance of a holding tank. Certainly, there is no doubt about Shell's financial ability to make that assurance and, with such a guarantee, it seems very unlikely that a holding tank at Shell's station would result in any pollutional or health hazards. Under these circumstances, Trautner appears to us to compel the conclusion that the requirements of regulation §71.61 — that there be an official plan provision and municipal ordinance before Shell can obtain a

permit for a holding tank—unreasonably deprive Shell of the use of its property. The department argued in its brief and motion for a hearing that the revocation of Shell's permit was Shell's own fault since it resulted from Shell's excavation of the site. Even if that were the case, we think that it is unreasonable at this point to deny Shell the use of its developed property, where Shell is willing to guarantee satisfactory maintenance of a holding tank, on the ground that there is no municipal plan for holding tanks at the site.

Inasmuch as there is an indication by DER that within a period of two to three years the soil on Shell's land may be capable of accommodating a septic system and, inasmuch as holding tanks are at best a temporary expedient, we think that the Bucks County Department of Health may condition further the granting of its permit upon the installation of the septic disposal system when the soil on the property is capable of accommodating such.

## CONCLUSIONS OF LAW

1. The board has jurisdiction over the subject matter and the parties to these proceedings.

2. The Pennsylvania Sewage Facilities Act, supra, does not authorize the adoption of 25 Pa. Code §71.61(a)(1) and (2).

3. The Clean Streams Law, supra, in section 402 authorizes the adoption of reasonable restrictions on the use of holding tanks for sewage.

4. Where the owner of a tract of land developed the land for use as a gas station while in possession of a permit for an on-lot sewage disposal system that was later revoked and now proposes to install a holding tank on the property, and where the owner is able to give reasonable assurances that the con-

tents of the holding tank will be emptied and disposed of in a satisfactory manner, the denial of a permit for a holding tank on the ground of noncompliance with the municipal plan requirements of 25 Pa. Code §71.61(a)(1) and (2) is unreasonable and a deprivation of the owner's property.

5. It is a reasonable restriction to impose a condition in a holding tank permit that the tank not be used if the soil can accommodate a septic system and such a system is installed thereon, or if public sewerage facilities are available to serve the land in question.

## ORDER

And now, June 30, 1975, the action of the Bucks County Department of Health in denying Shell Oil Company a permit to install a septic tank on its property in the Township of Doylestown, Bucks County, Pa., is hereby set aside and the said Bucks County Department of Health is hereby ordered to issue a holding tank permit to Shell Oil Company for its property in Doylestown, Bucks County, Pa., on the following conditions:

1. Shell Oil shall post a bond to guarantee the cleanliness of its holding tank operation and shall give reasonable assurances that it will deal only with a competent and reputable holding tank cleaning company and that it will cause the holding tank to be cleaned at intervals agreeable to Bucks County Department of Health, and

2. Shell shall cease discharging sewage into said holding tank upon either the availability of public sewerage facilities to serve its property or the installation of a septic disposal system on said property under order of Bucks County Department of Health, whichever occurs first.