## Rico, Inc. and McDonald's Corporation v. Department of Environmental Resources

178

*Lawrence A. Demase,* for appellant.
*Charles W. Herald,* for appellant.
*Zelda Curtiss,* for Commonwealth.

HARNISH, *Chairman,* December 17, 1981—McDonald's Corporation intends to develop a parcel of property located at 2425 Route 286 in Plum Borough, Allegheny County as a franchise restaurant. To implement this intent McDonald's entered into an agreement with Rico, Inc. for the exchange of a parcel of property owned by McDonald's for the said parcel adjacent to Route 286. This agreement was contingent upon Rico's obtaining all permits and approvals necessary for the construction of McDonald's Restaurant on the said parcel located adjacent to Route 286.

Rico, Inc. obtained a building permit for this restaurant on April 21, 1981 but on or about May 6, 1981 Plum Borough imposed a prohibition on connections to the Holiday Park Sewage Facilities system pursuant to 25 Pa. Code §94.21. This prohibition *per se* did not preclude Rico, Inc. from connecting to the said sewer system. However, on or about September 2, 1981 DER refused to accept a supplement to Plum Borough's Official Act 537

Sewage Facilities Plan covering the said restaurant because the borough had yet to submit to Department of Environmental Resources a wasteload plan to correct the perceived overload of said sewer system. Rico and McDonald's have appealed from DER's stated refusal and this matter, by agreement of all counsel, has been submitted on the basis of briefs and stipulated facts.

## STIPULATED FINDINGS OF FACT

1. On April 21, 1981, a building permit for a McDonald's Restaurant was issued by Plum Borough to Rico, Inc.

2. On or about May 6, 1981, Plum Borough imposed a prohibition on connections to the Holiday Park Sewage Facilities System in accordance with 25 Pa. Code §94.21.

3. On or about June 12, 1981, Plum Borough submitted to the department a plan supplement to its official sewage plan for the development of McDonald's Restaurant.

4. On or about July 16, 1981, the department returned the plan supplement to Plum Borough.

5. On or about August 15, 1981, an amended plan supplement was resubmitted by Plum Borough to the department.

6. On or about September 2, 1981, the department refused to accept the supplement, pursuant to 25 Pa. Code §94.14 and 25 Pa. Code §71.16(e)(5), because Plum Borough failed to submit a Wasteload Management Corrective Plan as required by 25 Pa. Code §94.21(a)(3).

7. The parties agree this appeal presents the single issue of whether the department may reject a plan supplement based on a municipality's failure to submit a corrective plan to the department pursuant to 25 Pa. Code §94.21(a)(3) when a building

permit for the development was issued prior to the imposition of a prohibition on connections to the sewage system.

8. The parties hereto agree to submit the issue stated in paragraph 7 above to the Environmental Hearing Board on briefs.

## DISCUSSION

The sole issue presented to the board in the instant matter is:

"Whether the Department may reject a plan supplement based on a municipality's failure to submit a corrective plan to the Department pursuant to 25 Pa. Code 94.21(a)(3) when a building permit for the development was issued prior to the imposition of a prohibition on connections to the sewage system."

This issue is one of the first impression with this board but the board has dealt with the consequences of overloaded municipal sewage treatment systems on a number of occasions. In Com. v. Borough of Carlisle, 16 Pa. Commonwealth Ct. 341, 330 A. 2d 293 (1974), and in East Pennsboro Township Authority v. DER, 18 Pa. Commonwealth Ct. 58, 334 A. 2d 798 (1975), Commonwealth Court upheld adjudications of this board which had modified sewer ban orders issued by DER due to overloaded conditions in the sewer systems of said respective municipalities.

As the attorney for DER in Carlisle Borough, supra, the board's present chairman strenuously argued that neither DER nor this board could allow a single additional connection to the Carlisle Borough sewage treatment system since that system was hydraulically and organically overloaded and was, indeed, polluting the waters of the Commonwealth in violation of inter alia, sections 201, 202

and 401 of the Pennsylvania Clean Streams Law of June 22, 1937, P.L. 1987, as amended, 35 P.S. §§691.201, 691.202 and 691.401, respectively. This argument did not prevent this board from modifying DER's sewer ban order by allowing the connection of some four homes per month to the said system nor did it prevent Commonwealth Court from upholding said adjudication upon appeal.

A similar result was reached in East Pennsboro Township Authority v. DER, EHB Docket (73-287-W issued August 9, 1974), 3 EHB 33, which adjudication was also upheld by Commonwealth Court at East Pennsboro Township Authority v. DER, 18 Pa. Commonwealth Ct. 58 334 A. 2d 798 (1975). Both of these decisions evidence this board's long standing attempt to support DER's efforts to abate pollution from overloaded sewage systems while yet building enough "give" into the sewer ban system to protect other public interests and to withstand the type of constitutional attack which completely undercut a DER program in Com. v. Trautner, 19 Pa. Commonwealth Ct. 116, 338 A. 2d 718 (1975).

The board also built "give" into the sewer ban system by fashioning certain exceptions to sewer bans. Actually in Moon Nurseries, Inc. v. DER, EHB Docket 72-395-B (issued December 31, 1973), 2 EHB 271, and other adjudications cited therein this board did not so much fashion a new policy but rather raised DER's policy concerning sewer bans to the level of rules which the department was obliged to follow. The pertinent sewer ban exception to the instant matter carved out by those early adjudications was that those structures for which building permits had been issued prior to the date of receipt of the sewer connection ban were not covered by that ban. This exception was specif-

ically approved by Commonwealth Court in F. and T. Construction Company v. DER, 6 Pa. Commonwealth Ct. 59, 293 A. 2d 138 (1972).

It is no secret that the department's vigorous issuance of sewer ban orders to municipalities across the Commonwealth created the type of backlash which no public agency desires or can long endure. Thus, in order to shift the burden of anticipating and addressing sewer overload problems to the municipalities which experience such problems the Pennsylvania Environmental Quality Board promulgated Chapter 94 of DER's regulations. Pursuant to Chapter 94 of DER's regulations, 25 Pa. Code §94.1 et seq., municipalities have the responsibility of total wasteload management planning. Furthermore, pursuant to 25 Pa. Code §94.21(a)(1) of said regulations a municipality is required to impose a prohibition on connections to its sewerage system if its annual wasteload report establishes (or DER determines) that the sewerage system or any part thereof is either hydraulically or organically overloaded.

As originally promulgated, 25 Pa. Code §94.21(a)(1), like DER's original sewer ban procedures, had no "give", but after this board questioned the constitutionality of this regulation in Lancaster v. DER, 6 D. & C.3d 159 (EHB 1978), it was amended, to its present form, which requires a municipality to "[p]rohibit new connections to the overloaded sewerage facilities *except as approved by the permittee pursuant to the standards for granting exceptions contained in §§94.55-94.57 of this title (relating to building permit issued prior to ban, replacement of a discharge, and other exceptions)." (Emphasis supplied.)*

Even DER admitted that this regulation, ". . . if read in isolation, [would] appear to dictate the re-

sult that a building permit should provide an exception in this case" (p. 6 DER's brief). However, DER argues that the above regulation should be read *in pari materia* with 25 Pa. Code §71.16(e)(5) and 25 Pa. Code §94.14.

Said sections provide as follows:

"71.16. Approval of plans and revisions . . . (e) In approving or disapproving an official plan or revision, the Department will consider the following: . . . (5) whether the plan or revision is consistent with the requirements of Chapter 94 of this title (relating to municipal wasteload management)."

"94.14. Approval of official plans and revisions No official plan or revision will be approved nor will a supplement be considered adequate by the Department pursuant to Chapter 71 of this title (relating to administration of the sewage facilities program) that is inconsistent with the requirements of this chapter."

These sections, argues DER, required it to deny the plan supplement submitted by Plum Borough on behalf of Rico, Inc. for the said McDonald's Restaurant because Plum Borough had not satisfied the mandatory requirements of 25 Pa. Code §94.21(a)(3) by submitting to DER a correction plan to reduce the overload on its sewerage system.

Rico and McDonald's counter by asserting that since the exceptions contained in sections 94.55-94.57 are within Chapter 94, a plan supplement or revision can be ". . . consistent with the requirement of Chapter 94 . . ." where it authorizes connection of units with prior building permits to overloaded systems.

Appellants also argue that the document at issue is (and should be) a plan supplement rather than a plan revision so that the provisions of sections

71.16 and 94.14 do not apply. Taking this second issue, first, we agree with appellants. The decision of whether a project requires a revision or a supplement is a matter within the discretion of DER and will not be lightly set aside by this board; Maxwell Swartwood v. DER, no. 2435 C.D. 1979 (decided January 23, 1981); Butera v. DER, EHB 80-114-H, issued March 10, 1981.

However, it is one of the functions of this board to check abuse of discretion by DER. According to 25 Pa. Code §71.15(c)(2) a plan revision is called for only where the official sewage plan is inadequate to meet the sewage disposal needs of the proposed facility.

DER alleges that Plum Borough's sewage facilities plan is "inadequate" because (and solely because) of the alleged overload of the Holiday Park sewage system, but by virtue of 25 Pa. Code §94.21(a)(1) appellants, as building permit holders, are entitled to connect to said system notwithstanding its alleged inadequacy. Thus, as to appellants the Plum Borough plan is "adequate" and a plan supplement rather than a plan revision is what is required to comply with the Pennsylvania Sewage Facilities Act of January 24, 1966, P.L. (1965) 1535, as amended 35 P.S. §750.1 et seq. To hold otherwise would be to take away the building permit exemption granted by 25 Pa. Code §94.21(a)(1) and we do not believe that the Environmental Quality Board intended such a result.

Since 25 Pa. Code §71.16(e)(5), on its face, applies only to sewage facilities plans and revisions thereto rather than to plan supplements, this section does not pertain to the instant matter. 25 Pa. Code §94.14 does still pertain since it deals with plan supplements as well as plans and revisions

thereto. But this section also deals with the adequacy of the original plan pursuant to 25 Pa. Code §71.15(c)(2) so what we have stated above concerning that section applies with equal force here.

Moreover, contrary to DER's argument, our construction of 25 Pa. Code §94.21 does not render 25 Pa. Code Chapter 71 meaningless. The information required by Chapter 71 of a plan supplement must still be supplied even where a building permit exception is recognized. To be sure, construed in this manner, the requirements of Chapter 71 may not be used to frustrate the holder of a building permit exception (he will be allowed to connect the overloaded system once he complies with the requirements for a plan supplement) but we believe that the appellants have correctly construed the East Pennsboro, supra, adjudication as standing for the proposition that the building permit exception is *supposed* to overcome the all related legal hurdles to connection to the sewer system.

DER argues that the 25 Pa. Code §94.21(a)(1) exemption should only be available where the would-be developer had obtained sewage facilities planning approval under Chapter 71 and had also obtained his building permit prior to the imposition of a connection prohibition. While this might be a prudent course for a developer to follow it is not required by any cited authority and, to the contrary, as DER notes, many municipalities refuse to process developers' requests for sewage facilities plan revisions and supplement unless and until the developer has first obtained his building permit. Clearly, developers in such municipalities would be exposed to the same type of catch 22 which brought down an entire DER regulatory effort in Trautner, supra. Thus, our decision today far from rendering

25 Pa. Code Chapter 71 meaningless, helps to build enough "give" into the system to ensure that in the cases where no exception is permitted by the Chapter 94 regulations, these regulations will be applied to sewage facilities plans and revisions and supplements thereto as well as connections to an overloaded sewer system.

Before closing we feel compelled to mention that the alleged overload which underlies all of DER's actions in this matter has yet to be clearly demonstrated to this board. In Toro Development Company v. DER, EHB 81-034-H, where DER's determination of an overload in Plum Borough's Holiday Park system was challenged, the evidence presented left a considerable doubt that the alleged overload existed or was imminent.

## CONCLUSIONS OF LAW

1. The board has jurisdiction over the subject matter and the parties.

2. DER's rejection of appellants' plan supplement was arbitrary and capricious where appellant held a building permit issued prior to the imposition of a prohibition on connections to the sewage system.

## ORDER

And now, December 17, 1981 appellants' appeal is granted and DER is directed to promptly approve the sewage facilities plan supplement at issue, denial of which by DER on July 16, 1981 gave rise to the instant appeal.