651 A.2d 237

**NBD MORTGAGE COMPANY, INC., formerly known as Indiana Mortgage Corporation, assignee of Clarion Mortgage Company, Petitioner,**

v.

**PENNSYLVANIA HOUSING FINANCE AGENCY HOMEOWNER EMERGENCY ASSISTANCE PROGRAM, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 1994.

Decided Dec. 1, 1994.

646

Blaise J. Guzewicz, for petitioner.

John Goryl, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ. NARICK, Senior Judge.

FRIEDMAN, Judge.

NBD Mortgage Company, Inc. (NBD) petitions for review of an order of the Pennsylvania Housing Finance Agency (Agency) denying NBD's request for additional fees and costs associated with NBD's foreclosure action against Floyd and Sharon O'Brien (O'Briens). We affirm.

The O'Briens entered into a mortgage agreement for their home and, through various assignments, NBD became mortgagee of the property. On July 7, 1993, pursuant to the Homeowner's Emergency Mortgage Assistance Act (Act 91)[1], NBD notified the O'Briens that their mortgage was delinquent in the amount of $6,279.02 and of NBD's intent to begin foreclosure proceedings. Under section 403–C(b) of Act 91, 35 P.S. § 1608.403c(b), this notice provided the O'Briens with 30 days to meet either with NBD or with a consumer credit counseling service to attempt to resolve the delinquency. (S.R. at 1–3.) On August 6, 1993, the O'Briens met with the Consumer Credit Counseling Service of Lehigh Valley, Inc. (Counseling Service). The Counseling Service notified NBD of the meeting, thereby requiring NBD to stay all action in the foreclosure proceeding for 30 days from the date of the meeting, or until September 6, 1993. 35 P.S. § 1680.403c(b). By August 19, 1993, the Counseling Service had received the information it requested from NBD concerning the O'Briens' mortgage delinquency. The O'Briens then met with the Counseling Service again on August 27, 1993 to prepare an application for a Homeowner's Emergency Mortgage Assistance Loan (HEMAP loan), available through the Agency's Homeowner's Emergency Mortgage Assistance Program. The

1. Act of December 23, 1959, P.L. 385, *as amended,* 35 P.S. §§ 1680.401c–1680.410c.

Agency received the O'Briens' completed application on September 9, 1993. On that same day, the Agency notified NBD that it had received the application, informing NBD that, pursuant to Act 91, NBD could not commence legal action to foreclose upon its mortgage with the O'Briens during the time that the application is pending. The Agency explained that, in accordance with Act 91, it would determine the O'Briens' eligibility for a HEMAP loan within 60 days of the receipt of the application and transmit notice of the decision to NBD within 5 days after that. 35 P.S. § 1608.403c(b). (R.R. at 26–A; S.R. at 10.) However, the notice sent to NBD was mistakenly addressed to NBD in Detroit, Minnesota rather than Detroit, Michigan, and the record does not indicate whether NBD ever received it.[2]

On October 22, 1993, NBD filed a Complaint in Mortgage Foreclosure against the O'Briens in the Court of Common Pleas of Lehigh County. On the same day, the Agency notified NBD that the Agency had approved the O'Briens' application for a HEMAP loan by sending NBD a copy of the approval letter. NBD received this notice on October 28, 1993. According to the letter, the Agency's approval was conditioned on the O'Briens contributing $3,500.00 towards the delinquency *at the loan closing*. In addition, the O'Briens were required to indicate loan acceptance by signing and returning an enclosed form within 10 days of receipt of the letter.[3] (R.R. at 27–A–29A; S.R. at 11–13.)

An Agency employee telephoned NBD on November 24, 1993, requesting the itemization of attorneys' fees and advising NBD that the Agency required a breakdown of attorneys' fees before it could proceed with the loan closing.

**2.** According to the Agency, the Counseling Service mailed the application to the Agency on August 30, 1993 and, on the same day, notified NBD that the O'Briens' loan application had been mailed to the Agency. (S.R. at 9.) However, the hearing examiner makes no mention of this August 30th notification and NBD, although acknowledging that the Counseling Service sent the letter, never makes clear whether NBD received it. (NBD brief at 5.)

**3.** On October 25, 1993, the O'Briens signed a confirmation stating that they wished to receive the HEMAP loan, which the Agency received on October 27, 1993. (R.R. at 15–A; S.R. at 15.)

On November 29, 1993, NBD took default judgment against the O'Briens for failure to respond to the complaint or resolve the delinquency. At that time, the Lehigh County Sheriff's Office attached costs and commission in the form of poundage to the action in the amount of $2,353.35, and, in addition, NBD incurred additional attorney's fees in connection with the foreclosure action. Thereafter, the Agency, having approved the O'Briens' HEMAP loan, sought reinstatement of the mortgage.

On December 2, 1993, Louis Vitti, an NBD attorney, provided the Agency with a reinstatement amount of $13,776.78, including $9,423.02 arrears, a lump sum of $3,280.35 in attorneys' fees and costs per judgment and $1,073.41 sheriff's poundage. Again on December 16, 1993, an NBD employee provided the Agency with a non-itemized amount for attorneys' fees and costs. By letter dated December 22, 1993, the Agency repeated its request for an itemized statement supporting the attorneys' fees and costs for which NBD requested reimbursement;[4] however, in a December 30, 1993 response, NBD failed to comply with the Agency's request.[5] NBD

---

**4.** In the letter, the Agency repeated that NBD had been notified of the O'Briens' HEMAP loan approval in October at which time it had asked NBD for a breakdown of the amounts due. The Agency stated that NBD did not supply the requested information until December 16, 1993 when an NBD employee, by telephone, provided an amount which included a lump sum of $4,353.76 for attorneys' fees and costs. The Agency then stated that between December 16 and December 22, 1993, an Agency employee, Tonyia Miller, contacted NBD's attorney in the foreclosure action concerning these amounts and she was informed that the attorneys' fees were a flat amount of $3,280.35 plus $1,073.41 sheriff's poundage, and that no itemization would be provided. The Agency then reiterated its need for an itemized breakdown of attorneys' fees and costs before it could reimburse NBD. (S.R. at 17–18.)

**5.** In its December 30th letter, NBD explained why it was requesting reimbursement for sheriff's poundage imposed on the November 29, 1993 default judgment. NBD stated that it had been advised that reinstatement was conditioned upon payment by the O'Briens of $3,500.00 within 15 days, and because NBD never received notice that the O'Briens made such payment after the October 22, 1993 loan approval, NBD had taken judgment on November 29, 1993. As to attorneys' fees, NBD stated that the $75 per hour allowance established by the Agency was unreasonable. (R.R. at 40-A–41-A; S.R. at 19–20.)

finally submitted an itemized breakdown of professional services by letter dated February 3, 1994. (S.R. at 21–22.)

By letter dated February 14, 1994, the Agency agreed to pay $187.50 toward NBD's requested attorneys' fees. This amount represented payment for the 2.5 hours of legal services rendered prior to October 28, 1993, when NBD received notice that the O'Briens' HEMAP loan was approved. However, the Agency denied payment of the remaining attorneys' fees, sheriff's costs and poundage and filing fees on grounds that (1) NBD proceeded with the foreclosure action even after being informed that the O'Briens had been approved for a mortgage assistance loan, and (2) NBD's payment rate for attorneys' fees incurred in the foreclosure action exceeded the Agency's $75 per hour standard. (S.R. at 23–24.)

NBD requested an administrative hearing to appeal this determination, seeking reimbursement of $1,073.00 sheriff's poundage, $1,280.35 foreclosure costs and $2,000.00 attorneys' fees. (R.R. at 19–A, 31–A; S.R. at 40, 56.) Following a March 16, 1994 hearing,[6] the hearing examiner affirmed the Agency's decision.

■ NBD now appeals to this court,[7] arguing that: (1) the Agency erred in failing to reimburse NBD for costs incurred

**6.** At that hearing, NBD's attorney stated that on November 4, 1993, a representative of the Agency spoke to Viktor Andrejev, an NBD employee, asking that NBD stay foreclosure proceedings for 10 days so that the Agency could determine whether the O'Briens could come up with the necessary $3,500.00, something which NBD questioned. According to NBD, the Agency informed NBD that closing would take place within that time or a date certain would be set. (R.R. at 9–A–11–A.)

However, the hearing officer found that no evidence existed in the Agency's records to demonstrate either that the Agency advised NBD of a loan closing within 10 days or that the O'Briens would or would not provide the required $3,500.00. In fact, with regard to the latter, the record indicates that because the O'Briens did not have to pay the $3,500.00 until the date of the closing, their ability to pay was not an issue at that time. (R.R. at 15–A–16–A, 22–A.) We note that on February 18, 1994, the Agency waived the $3,500.00 payment and substituted an $80 per month contribution.

**7.** To expedite the receipt of funds not in dispute, a loan closing was held May 4, 1994, at which time the Agency paid NBD all mortgage arrearages. The Sheriff of Lehigh County has agreed to wait to collect

in the mortgage foreclosure proceeding; (2) the Agency erred in its determination of "reasonable" attorneys' fees for a mortgage foreclosure proceeding; and (3) the Agency's procedure deprived NBD of the use of its property without due process by requiring NBD to delay its action to assert property rights indefinitely, dependent upon the O'Briens' acceptance of mortgage assistance.

With regard to the first issue, NBD asserts that the Agency is required by law to pay the "reasonable costs and reasonable attorneys' fees already incurred by such mortgagee." 35 P.S. § 1608.405c(a). The crux of NBD's argument rests in its assertion that, although it received notice of the HEMAP loan approval on October 28, 1993, NBD never received official notification that the O'Briens had formally accepted the HEMAP loan offer, acceptance which NBD contends required the O'Briens to sign an acceptance form *and to pay $3,500.00 towards arrearages.* NBD maintains that after learning that the loan was approved, it reasonably waited 28 days for notification of the O'Briens' loan acceptance, and 24 days beyond a November 4, 1993 phone call promising NBD that the loan closing would take place in 10 days.[8] Thus, NBD argues that because it acted properly and reasonably in taking the default judgment on November 29, 1993, the Agency should reimburse NBD for all requested amounts connected with that judgment.

In response, the Agency's position is a simple one. It contends that the O'Briens received Act 91 notice on July 7,

the poundage and costs at issue until this court determines who should properly pay. In making this determination, our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether the agency's decision was supported by substantial evidence. *Johnson v. Pennsylvania Housing Finance Agency,* 99 Pa.Commonwealth Ct. 77, 512 A.2d 1319 (1986).

8. In addition, NBD claims that it was permitted to proceed with legal action because the Agency was required *to notify NBD of its approval within 5 days of the determination,* 16 Pa.Code § 40.203(9). However, NBD did not receive notice of the application approval until October 28, 1993, *6* days after the determination was made. This argument must fail. 16 Pa.Code § 40.203(9) requires notification of HEMAP loan approval within 5 *business* days, not 5 calendar days; therefore, NBD's notification was timely.

1993 and had a face-to-face meeting with the Counseling Service on August 6, 1993, within the statutorily permitted period. The Agency received the HEMAP loan application on September 9, 1993 and rendered approval on October 22, 1993, within the statutory 60–day time period.[9] Although conceding that, due to the mistaken address, NBD might not have received notice of the Agency's *receipt* of the application, the Agency points out that NBD had notice of the *approval* of the O'Briens' HEMAP loan on October 28, 1993, still within this 60–day period. Therefore, the Agency contends that as of October 28, 1993, no further legal action should have taken place and the Agency is under no obligation to reimburse NBD for any fees or costs connected with foreclosure proceedings taken after that time. We agree that NBD should not have pursued the foreclosure action after October 28, 1993.

▮▮ Act 91 clearly forbids commencement of a mortgage foreclosure action while approval of a HEMAP loan application is pending. 35 P.S. § 1608.403c(b). Thus, Act 91 implicitly requires a stay of foreclosure proceedings after a homeowner's eligibility for mortgage assistance has been determined. Realizing the important underlying purpose of Act 91,[10] and given the fact that NBD had to know the loan process was continuing, we cannot accept that NBD acted "reasonably" when it voluntarily proceeded with the foreclosure action after learning that the O'Briens' loan application

9. NBD argues that the Agency's determination of approval on October 22, 1993 was beyond the 60–day period allowed for a determination of eligibility. NBD contends that the 60 day period actually commenced on August 19, 1993, when NBD provided mortgage information to the Counseling Service. This contention is without merit. Act 91 clearly requires a stay of action for 60 days from the date that the Agency receives a mortgagor's loan application, in this case on September 9, 1993. 35 P.S. § 1608.403c(b).

10. Act 91 helps Pennsylvania residents who might otherwise lose their homes by providing assistance to those homeowners who, suffering financial hardship due to circumstances beyond their control, are unable to meet their mortgage responsibilities. 35 P.S. § 1608.404c(a)(4).

had been approved.[11]   Rather, we agree with the Agency that NBD should bear the expense of its imprudent decision.

■   As to the issue of attorneys' fees, NBD argues that the $75 per hour allowed by the Agency is without basis and simply unreasonable in light of the actual rate charged by practitioners in the foreclosure field.   In fact, NBD contends that the $2,000.00 it requests in attorneys' fees is quite reasonable for the more than 7 hours of time put into the case.

In response to this argument, the Agency contends that in the absence of any statutory definition of "reasonable" attorneys' fees, the responsibility falls to the Agency, which has defined reasonable attorneys' fees as "fees for legal services actually incurred by a mortgagee in commencing or pursuing an action of mortgage foreclosure" where those fees are "based upon a reasonable hourly rate for necessary services performed."   16 Pa.Code § 40.201.   In determining reasonableness of fees, the Agency has, since its inception, followed a uniform internal operating procedure requiring mortgagees to submit an itemized statement of legal services performed so that the Agency can determine which are necessary and, therefore, reimbursable.   In defense of the amount set, the Agency contends that although it allows a maximum *average* rate of $75 per hour, this *average* is in recognition of the fact that while attorneys often may charge a higher hourly rate for their services, much of the work is performed by paralegals and assistants who are billed at substantially less than $75 per hour.[12]   Finally, the Agency asserts that any expenses in-

---

**11.**  We might be somewhat more sympathetic with NBD's position if the hearing examiner had accepted NBD's version of the November 4, 1993 phone call; however, this was not the case and the record contains substantial evidence to support the hearing examiner's finding in this regard.   Further, even accepting that on November *4th*, NBD was promised a closing within 10 days, NBD still does not explain why it obtained a default judgment on November 29, 1993, after its November 24, 1993 communication with the Agency.   Certainly, at that point, NBD should have realized that the loan process was continuing and reconsidered its decision to pursue its legal action against the O'Briens.

**12.**  The Agency recently increased the average rate to $100 per hour to more properly reflect customary practitioners' billing rates. *See* 24 Pa.B. 3224–25 (1994).

curred by NBD after notification that the O'Briens' application had been approved are per se unreasonable.

Again, NBD's argument must fail. Although NBD may be dissatisfied with the $75 per hour rate set by the Agency, the Agency has offered a sound explanation for determination of that rate and clearly applies this standard equally. Moreover, as previously discussed, we agree that the Agency had reason to reimburse NBD only for those attorneys' fees incurred prior to October 28, 1993.

■ Finally, NBD argues that the Agency's interpretation of Act 91 has deprived NBD of its due process rights where the Agency, after approving an application for mortgage assistance, is not required to notify the mortgagee of the homeowner's acceptance or rejection of the offer and sets no time limit for the loan closing. (See R.R. at 18–A.) Relying on *Department of Environmental Resources v. Trautner*, 19 Pa.Commonwealth Ct. 116, 338 A.2d 718 (1975), NBD reasons that the Agency could not withhold its property rights until a third party conformed its actions;[13] in this case, until the O'Briens signed their acceptance of the HEMAP loan and paid $3,500.00. NBD points out that had the $3,500.00 requirement not been waived, NBD could have had to wait indefinitely for the closing to take place, without legal recourse.

In response to this last argument, the Agency contends that it is not only baseless but made in bad faith. First, the Agency maintains that Act 91 allows a mortgagee to proceed

13. In *Trautner*, the Environmental Hearing Board (EHB) sustained a landowner's appeal from the Department of Environmental Resources' (DER) denial of a permit for an individual on-lot sewage treatment system. DER had rejected the landowner's permit, reasoning that because the township in which the land was located had not provided DER with a "comprehensive program of water quality management," the landowner's sewage proposal was not in conformity with such a plan. In affirming the EHB, we recognized that applying this logic, the property owner's right to use his land depended entirely upon the township's action; if the township failed to satisfy DER, a landowner would be left with no sewage permit and no opportunity to use his land. Because the property owner's use of his land depended entirely on another party, over whom he had absolutely no control, we determined that the situation was confiscatory and tantamount to a taking without due process of law.

with legal action in certain circumstances, specifically noting section 405–C(d) of Act 91, 35 P.S. § 1608.405c(d), which requires a mortgagor to pay any amounts it must contribute within 15 days of the date established by the Agency.[14]   Further, the Agency claims that it sets a closing date for HEMAP loans after approval, usually trying to close within 60 days. More to the point, however, the Agency points out that it was not the O'Briens who delayed the closing here.   Rather, NBD itself caused the delay by failing to provide the Agency with the itemized statement of costs and attorneys' fees required to close a HEMAP loan, even though repeatedly requested to do so by the Agency.

■   Even accepting that the lack of a specific time frame between approval of an application and the actual loan closing arguably may be a potential source of problems, we cannot ignore the fact that it was NBD's own failure to itemize attorneys' fees which held up payment in this case.   There is every indication that the closing would have proceeded in a timely fashion if NBD had provided the Agency with this itemization when first asked.   Therefore, because NBD's own actions could and did affect its property rights, this case is distinguishable from *Trautner*.   The interpretation given a statute by the agency charged with its execution and application is entitled to great weight and should be disregarded or overturned only if such construction is clearly erroneous. *Valentine v. Pennsylvania Housing Finance Agency*, 98 Pa.Commonwealth Ct. 350, 511 A.2d 915 (1986).   Here, the Agency's interpretation of Act 91 as applied to the facts of this case was proper and did not violate NBD's due process rights.

Accordingly, we affirm the Agency's order.

## ORDER

AND NOW, this 1st day of December, 1994, the order of the Pennsylvania Housing Finance Assistance Agency, Home-

---

14.   Of course, in this case, the date established was the date of the loan closing.   Because there was not a specific date for that closing, NBD could still have an indefinite wait.

owner Emergency Assistance Program, dated February 14, 1994, is hereby affirmed.